1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

Jo Anna Lang, PR of the Estate Dick
Lang, Wife and Husband, adoptive
parents of C.L., a minor child (DOB 08-
10-2011) and R.L., a minor child. (DOB
11-24-2003), Jo Anna Lang, Guardian ad
Litem, for C.L. and R.L.

      Plaintiffs,

    v.

STATE OF WASHINGTON,
DEPARTMENT OF SOCIAL AND
HEALTH SERVICES, (DSHS) CHILD
PROTECTIVE SERVICES, (CPS),
Kaytena Gonzalez, and MARK AUSTIN
GONZALEZ individually and as a marital
community, Pamela Williams, and Joe
Doe Williams, and as a marital
community, Jennifer White and JOHN
DOE White individually and as a marital
community, Laura Caruso and JOHN
DOE Caruso, individually and as a marital
community; Sarah Coshow, and JOHN
DOE Coshow, individually and as a

Case No.:

COMPLAINT

**DEMAND FOR JURY TRIAL**

COMPLAINT - 1

1  marital community, Janelle E. Redmond
2  and JOHN DOE Redmond, individually
3  and as a marital community, Larraine
4  Martinez, and JOHN DOE Martinez,
5  individually and as a marital community,
6  Beth A. Kutzera, and JOHN DOE
7  Kutzera, individually as a marital
8  community, J. Aaron Merino, and JOHN
9  DOE Merino; individually and as a martial
10  community  Jaimee Scheffler and JOHN
11  DOE Scheffler individually and as a
12  marital community,
13  And,
14
15  Office of the Attorney General, State
   Agency, Danial Hsieh, AAG
16  And,
17
18  Vancouver Police Department,
19  And,
20  Cowlitz County Sheriff's Office,
21  And,
22
23  Eimiko Murlin and Jeff Ian Murlin,
   individually and as a marital community.
24  Foster Parents of C.L.,
25  And,
26
27  Steve Vallembois, and Jimmy Howard,
   individually, and as a community,
28  Foster Parents for R.L.,
29  And,
30
   Court Appointed Special Advocate,

COMPLAINT - 2

1  C.A.S.A,

2  And,

3

4  Legacy Salmon Creek  Medical Center,
   ~~Kimberly Copeland, MD,~~

5

6           Defendants.

7

8                    I.      INTRODUCTION

9         COMES NOW the above-named Plaintiffs, by and through their attorney of

10  record, KEVIN L. JOHNSON, P.S., Attorney & Counselor at Law, for causes of action

11  against all of the above-named Defendants.

12

13         This is a civil action commenced pursuant to 42 U.S.C. § 1983 to redress

14  Plaintiffs' civil rights secured to the Plaintiffs, Dick Lang (now deceased), Joanna Lang

15  as a community, and as the parents of R.L. (DOB 2003) and C.L. (DOB 11).

16
   Defendants, deprived all Plaintiffs of their federal and state constitutional and statutory
17
   rights while acting under "color of law;" unlawfully removed and detained R.L. and C.L.
18

19  from their non-abusive home and placed them in separate abusive homes, absent a

20
    warrant and without probable cause, or exigent circumstances, in deprivation of their
21

22  rights guaranteed and protected by the Constitution, Laws of the United States,

23  Washington Constitution,  and Laws of Washington State. Plaintiffs complain and allege

24
    as follows:
25

26                 II. SUBJECT MATTER JURISDICTION

27         1.      Before commencing a suit against a government entity in

28
    Washington, a Plaintiff is required to file a standard claim form with Enterprise
29

30  Services RCW 4.92.100. No action subject to the claim filing requirements of RCW

COMPLAINT - 3

4.92.100 shall be commenced against the state, or against any state officer, employee, or volunteer, acting in such capacity for damages arising out of the tortious conduct until sixty calendar days had elapsed after the claim is presented to the Department of Enterprise Services." RCW 4.92.110. Plaintiffs have filed four torts claim forms, which were received by the Office of Enterprise Services on August 30, 2019, and as such, the requisite sixty calendar days have elapsed. See, Exhibits 1,2,3,4.

2.      The Enterprise Services and the Attorney General are required to collaborate in the investigation, denial, or settlement of the claim. RCW 4.92.210. On April 3, 2017 Plaintiff was informed by DSHS that the investigation would take 60-80 days. To date, the State of Washington has not communicated with the Plaintiff in an effort to resolve Plaintiffs' claims.  Hearing no prospects of resolution from the State of Washington, Plaintiffs filed this federal lawsuit to prosecute their claims.

A.      FEDERAL JURISDICTION

3.      Jurisdiction of the Federal Court attaches under 42 U.S.C. §1983. Jurisdiction is conferred on this court by 28 U.S.C. § 1343(3) and 1343(4), which provide for original jurisdiction in this court of all suits brought under § 1983; in that the causes of action arise under the Constitution and laws of the United States; Discrimination under Title VII of the U.S. constitution codified at 42 U.S.C § 2000e, RICO § 1962; and 28 U.S.C. § 1367, in that causes of action arising under state law, are so related to the claims within the original jurisdiction of the court that it

COMPLAINT - 4

forms a part of the same case or controversy under Article III § 2 of the Federal

Constitution.

### B.     SUPPLEMENTAL JURISDICTION

4.      The Plaintiffs request the court exercise supplemental jurisdiction

over State Law claims under 28 U.S.C. § 1367 for violations of Washington

Constitution, art. 1 § 10; RCW 13.34.020, RCW 13.34.050, RCW 26.44.030(1)(iii),

Fraud Chapter 9A.60 RCW, Perjury, Negligent Investigation, Harmful Placement,

Defamation, kidnaping, Conspiracy, Negligent Infliction of Emotional Distress,

Outrage, and for Injunctive relief.

### III. PERSONAL JURISDICTION

5.      The Plaintiffs are citizens of the state of Washington and reside in

Clark County, Vancouver, Washington within the jurisdiction of the Western District

Federal Court.

6.   Most individual Defendants are state actors/officials, working on behalf of

a State Agency, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, (DSHS)

CHILD PROTECTIVE SERVICES, (CPS),  Kaytena Gonzalez, and Mark Austin

Gonzalez individually and as a marital community, Pamela Williams, and John Doe

Williams individually and as a marital community, Jennifer White and JOHN DOE White

individually and as a marital community, Laura Caruso and JOHN DOE Caruso,

individually and as a marital community; Sarah Coshow, and JOHN DOE Coshow,

individually and as a marital community, Janelle E. Redmond and JOHN DOE

Redmond, individually and as a marital community, Larraine Martinez, and JOHN DOE

Martinez, individually and as a marital community, Beth A. Kutzera, and JOHN DOE

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
1405 Harrison Ave NE, Suite 204
Olympia, Washington 98502
(360) 753-3066

1  Kutzera, individually as a marital community, J. Aaron Merino, and Jane DOE Merino;

2  individually and as a martial community  Jaimee Scheffler and JOHN DOE Scheffler

3

4  individually and as a marital community are all located in Clark County, City of

5  Vancouver, State of Washington.

6         6.     Defendant, the Vancouver Police Department, at all times relevant

7

8  to this action, was acting on behalf of the City of Vancouver in the State of

9  Washington.  Defendant is a municipality and Plaintiffs assert that it violated a city

10  or county custom or policy that caused the constitutional deprivation to Plaintiffs'

11

12  civil rights.

13         7.     Defendant, Cowlitz County is a municipality and Plaintiff asserts

14  that it violated a city or county custom or policy that caused the constitutional

15  deprivation of Plaintiffs' civil rights.

16

17         8.     A claim for damages form was submitted to both Defendants

18  Vancouver Police and the Cowlitz County and hearing no response, Plaintiff filed

19  this lawsuit.

20

21         9.     Defendant Dan Hsieh is a "state actor" who at the time was working

22  as an Assistant Attorney General, (AAG) for the State Attorney General's Office

23  located in the State of Washington.  He was complicit in the misconduct which

24  caused a constitutional deprivation of Plaintiffs' constitutional rights.

25

26         10.    Eimiko Murlin and Jeff Ian Murlin, individually and as a martial

27  community, were the foster care parents for C.L. and were complicit in the

28  constitutional deprivation of Plaintiff's rights.

29

30

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
1405 Harrison Ave NE, Suite 204
Olympia, Washington 98502
(360) 753-3066

11.     Steve Vallembois and Jimmy Howard, foster parents of R.L., individually and as a marital community were complicit in the constitutional deprivation of Plaintiff's rights.

12.     Court Appointed Special Advocate (C.A.S.A.) was complicit in the constitutional deprivation of Plaintiff's rights.

13.     Kimberly Copeland, MD, an agent of Legacy Salmon Creek Medical Center, and a vendor of DSHS-CPS, was complicit in the constitutional deprivation of Plaintiff's rights.

### IV. Venue

14.     All acts by the Defendants arose in Clark County, Washington located within the Western Federal District Court at Tacoma pursuant to 28 U.S.C. § 1391.  Upon information and belief, all Defendants reside or do business in the State of Washington, and all of the events or omissions giving rise to Plaintiff's claims occurred in this federal district.

### V. STATEMENT OF THE CASE

15.     First, Counsel for Plaintiffs would like to introduce the Court and Defendants to Dick and Joanna Lang, R.L. and C.L. their children. See  Exhibit A.

16.     The Legislature has declared that the family unit is a fundamental resource of American life which be nurtured.  The Legislature has further declared that the family unit should remain intact unless a child's conditions of basic nurture, health or safety is jeopardized.  The right of the child to basic nurturing includes the right to be safe,  stable, and permanent home and a speedy resolution of any proceeding. See, RCW 13.34.020.

COMPLAINT - 7

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
1405 Harrison  Ave NE, Suite 204
Olympia, Washington 98502
(360) 753-3066

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

17.     Under this legislative declaration, the bond between a child and his parents is of paramount importance and any intervention into the life of the child is also an intervention into the life of the parents. Plaintiffs allege that Defendant DSHS-CPS complicit with the help of the other defendants, separated and detained R.L. and C.L. from their mother, father and home from February 3, 2017 to April 4, 2018.  425 days.

18.     For more than 30 years, Plaintiffs' Dick and Joanna Lang have opened their hearts and home and adopt minority special needs children.

19.     On January 31, 2017 Defendant CPS received an anonymous telephone referral, Intake # 3534736, regarding the Plaintiffs Dick and Joanna Lang's' alleged mistreatment of R.L.  See Exhibit 5. DSHS-CPS's investigation totaled 48 hours, and an alleged discussion with Plaintiff before concluding that the allegations of negligent treatment or maltreatment involving R.L. was founded.  No investigation regarding C.L. occurred. DSHS-CPS knew at this time that the referent was and still is incompetent to testify in a court of law since December 28, 2017. See Exhibit 6.   The referral which caused the founded finding led to the removal of R.L. and C.L. from Plaintiff's home detaining the children in two separate foster homes based on the evidence of an incompetent referent. Knowing about this evidence is perhaps the reason why DSHS-CPS or the AAG did not call her to testify at any hearing.

20.     On Thursday, February 2, 2017 at approximately 10 a.m., CPS, Social Workers, Kaytena Gonzalez and Pamela Williams, along with the Vancouver Police  banged on Plaintiff's front door as if it was a police raid, scaring

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
1405 Harrison Ave NE, Suite 204
Olympia, Washington 98502
(360) 753-3066

the children and parents. Joanna Lang answered the door. After the Vancouver

Police (VP) Officer saw and spoke R.L., he refused to take R.L. & C.L. into

protective custody.  Shortly after this encounter with CPS and VP, Joanna Lang

called the Home School Legal Defense Association (HSLDA) who advised Plaintiff

to take R.L. to his regular pediatrician. See Exhibit 7.  Under RCW 26.44.100 it is

the duty of CPS to inform the Plaintiffs at the "point of contact" the reason for any

visit. Here, CPS never informed Plaintiffs of the reason or purpose for the contact,

nor did the Vancouver Police (VP). Neither DSHS-CPS nor the VP had a warrant

or order to take the children.

21.    On February 2, 2017 Kaytena Gonzalez, Pamela Williams and the

Vancouver Police gave Plaintiff Joanna Lang a hand-written note demanding that

she take R.L. to Legacy Salmon Creek ER for a full checkup.  See, Exhibit 8.

22.    On the advice of HSLDA Plaintiff followed up with Dr. Fuchs.

Plaintiff Joanna Lang took R.L. to Dr. Fuchs, R.L.'s regular physician.

23.    February 2, 2017 it was Dr. Fuchs  informed Plaintiff, Joanna Lang

the reason for the visit by CPS was R.L.'s thinness. Joanna told Dr. Fuchs that

"she homeschools R.L. and he spends a lot of time in his room and he's thin."

Joanna further indicated that she is aware of the issue and that R.L.'s weight

fluctuation was caused by his reaction to the medication that he was taking.  Since

2012, Plaintiff worked with Dr. Fuchs and other physicians to ensure the health and

will-being of R.L. R.L. began taking a new SSRI prescription in late October 2017,

the effects  can take several weeks to show. The medications taken by R.L. have

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
1405 Harrison  Ave NE, Suite 204
Olympia, Washington 98502
(360) 753-3066

1

2

3

4

varied over the years, with the fluctuation of his weight being well-documented.
The worst weight loss was in 2014 when he was taking Adderall.

24.      Since 2012, Dr. Fuchs,  treated R.L. for weight loss. Soon after

5

6

7

8

9

10

R.L.'s arrival in the Lang home, Dr. Fuchs and Joanna Lang discussed R.L.
mediation and  decided to try ADD medication to help R.L. with focus and
concentration. A side-effect of the medication is weight loss.  Since June 29, 2017,
R.L. was taking Zoloft and is gaining weight.  Dr. Fuchs discussed these issues
with CPS. See, Exhibit 9.

11

12

13

25.      After February 2, 2017, both DSHS-CPS and the AAG received oral
and/or written communication from Dr. Fuchs  after he examined R.L. Id.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

26.      On February 3, 2017, CPS took R.L. and C.L. to Legacy Salmon
Creek Hospital ER, where they both underwent "child abuse specific exams"
without the Plaintiffs' knowledge or presence. Both R.L. and C.L. were examined
by Tam T. Vuong M.D. who opined after the examination of R.L. & C.L. that: "No
signs of Physical Abuse," that both were "Safe to go Home," and that each should
"follow up with their pediatrician Charles E Fuchs M.D." Dr. Vuong further noted
that there were no "signs of abuse," "no malnourishment," and more generally, "no
medical concerns". See Exhibit 10 & 11. Despite having receive two medical
opinions, under the Statute R.L. and C.L. should have been safe to return home
because there was no imminent danger, or abuse.   Defendant DSHS-CPS refused
to allow the children to return to Plaintiffs.

28

29

30

27.      On February 3, 2018, Defendant Hsieh filed a Dependency Petition
for an Order to take R.L. into Custody and Placed in Shelter Care. Cause #17-7-

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
1405 Harrison Ave NE, Suite 204
Olympia, Washington 98502
(360) 753-3066

00038-0. See Exhibit 12 . On the same day, C.L. was added to the pick-up order, not the petition and a new Cause # 17-7-00039-8 appeared. The ex-parte order to take R.L. into custody was signed by the Commissioner but the ex-order for C.L. was signed by someone else. See Exhibit 13.

28.     On February 3, 2017, the Vancouver Police (VP) again banged on the Plaintiff's door scaring the children and Joanna and Dick Lang. Joanna Lang answered the door and stood there. One Vancouver Police Deputy threatened to obtain a warrant and further warned that he would *"kick the door down"* when they came back. Out of fear and intimidation, and for the safety and protection of C.L. and R.L., Plaintiff Joanna Lang let the four police deputies and three DSHS-CPS Social Workers into Plaintiffs' home. They proceeded to search the Lang's home and seize R.L. and C.L. and take property based on the pick-up order. See Exhibit 13.

29. Absent extraordinary circumstances a parent has a familial association and privacy that cannot be violated without adequate pre-deprivation procedures. This is significant because filing a dependency petition to procure an ex-parte order based on misrepresentation and omission in the declaration does not constitute notice and an opportunity to be heard to the Plaintiffs.

30. Parents may assert their children's 4th amendment claims their own 4th amendment claims as well as asserting other claims. Procurement of an order to seize R.L. and C.L. amounts to hearsay and is a violation of the 4th amendment to the Constitution of the United States and other federal statutes, RCWs, DSHS-CPS policy

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
1405 Harrison Ave NE, Suite 204
Olympia, Washington 98502
(360) 753-3066

and the certification on page 5, of the dependency petition to enter and seize Plaintiff's children. Thus, a deprivation of Plaintiffs' constitutional rights.

31.     On February 3, 2017, Kaytena Gonzalez falsely reported to "Adult Protective Services" (APS) that Plaintiff, Dick Lang was a vulnerable adult. On February 23, 2017, Adult Protective Services (APS) "closed" the referral and investigation regarding Dick Lang because Mr. Lang did not meet the criteria.  This referral was made the same day DSHS-CPS and the Vancouver Police seized and detained R.L. and C.L. from their home. DSHS-CPS appears to have some animus against the Plaintiffs. See, Exhibit 14, *and accompanying affidavit from Dick Lang*.

32.   On February 5, 2017, while in Foster Care, Mr. Howard, examined R. L.'s body before getting into the shower for marks and bruises, when two days prior, R.L. had a "specific child abuse examination"  from Dr. Vuong,  who opinioned that there was "no abuse".

33.     Sunday, at 2:15 pm on February 5, 2017 Defendant CPS, Social Worker, Kaytena Gonzalez arrived at Plaintiffs' front door again and handed Ms. Lang two smaller envelopes. Inside the envelops was a brief note regarding a Family Team Decision Meeting (FTDM) scheduled for February 6, 2017, the next morning at DSHS-CPS. Accompanying Plaintiffs to the FTDM  meeting were Pastor Jeff Leveton, his wife Holly, Kathryn Landers, and Wilma Jackson. See Exhibits 15, A, B, and C. The foster mother of C.L. Ms. Murlin was also in the meeting, despite her attendance being prohibited under §1720 of the DSHS-CPS FTDM policy. (noting that a foster parent is not allowed to attend a "family" meeting without the Plaintiffs' consent). DSHS did not get Plaintiff's consent prior to the

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
1405 Harrison Ave NE, Suite 204
Olympia, Washington 98502
(360) 753-3066

1

2

3

4

FTDM meeting and ignored the policy by allowing the Ms. Murlin to remain in the meeting in violation of RCW 13.34.067 and RCW 13.34.145 and Children Administration Policy. See, Exhibit 16.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

34.      The Family Team Decision Meeting (FTDM) must occur not less than 24 hours before the Shelter Care hearing. RCW 13.34.062 (2) (b) and (9) which states that "receipt shall be made a part of the court's file in the dependency action." Plaintiffs did not receive notice of the 72 Hour Shelter Care Hearing.  She found out about the Shelter Care Hearing when she attended the FTDM meeting on February 6, 2017 and did not receive a receipt of the notice that is required to be part of the court file. This conduct violated RCW 13.34.062. See Exhibit 17. Allegedly, on February 3, 2017 Ms. Gonzalez gave the notice to Plaintiff.  Plaintiff does not recall receiving this notice. Whether Plaintiff recalls or not really does not make a difference because DSHS-CPS, the AAG knew about the Doctors' opinions that R.L. and C.L. were safe to return home on February 3, 2017 so a hearing should have never been convened.

21

22

23

24

25

26

27

28

29

30

35.      Whenever a child is taken into custody by child protective services pursuant to a court order issued under RCW 13.34.050 or when child protective services was notified that a child has been taken into custody pursuant to RCW 26.44.050 or 26.44.056, child protective services shall hold a Shelter Care Hearing within 72-hours RCW 13.34.065.  The purpose of the Shelter Car Hearing is to determine whether R.L. and C.L. can be immediately and safely returned  home while adjudication of the dependency is pending.  The February 7, 2017 Shelter Care Hearing was a scheduling conference. See, Exhibit 18.  The participants

COMPLAINT - 13

failed to discuss anything substantive like whether R.L. and C.L. were safe to return home. No notice pursuant to RCW13.34.062 was given to Plaintiffs. The AAG scheduled the hearing for March 27, 30 2017 far beyond the 72-hours. See, Exhibit, 18-A. DSHS-CPS and the AAG knew about the Drs opinions--that the children were determined safe to return home on February 3, 2017. Instead of returning the children to their parents, DSHS-CPS placed R.L. and C.L. in separate foster homes in violation of the statute. R.L. and C.L. were separated and out-of-the Plaintiffs' home for 425 days.

36.     On February 3, 2017 Katie Gonzalez, reported the alleged child abuse incident to Defendant, Vancouver Police. On March 8, 2017 the investigation was assigned to Detective, Dustin Gouschaal. He interviewed referent, Holly Lang, who was not comfortable cooperating in the investigation. At this time Holly Lang was incompetent to testify. See, Exhibit 6. This important information was not in the Detective's report. Detective Gouschaal also tried to contact the collaterals. Randon Lang (whose telephone was no longer in service) and Wendy Lang, who, at this time, lived in Montana and did not return the Detectives calls. Gouschaal was not able to elicit any cooperation from those who were active in contacting and communicating with DSHS-CPS.

37.     Detective Gouschaal received numerous emails from Katie Gonzales that appeared to be from other collateral parties, who knew or may have had contact with R.L. While this information was potentially important for background information to a CPS case, the information supplied by Ms. Gonzalez,

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
1405 Harrison Ave NE, Suite 204
Olympia, Washington 98502
(360) 753-3066

1

2

3

4
CPS Social Worker was not of any evidentiary value to the case the Detective was investigating. See, Exhibit 18-B.

38.    In the February 7, 2017 Shelter Care Hearing Order, Defendant,

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21
Hsieh, AAG, DSHS-CPS and Mr. Waldo, agent of C.A.S.A, the Children's GAL, supported that there was a risk of imminent harm to the children to support the out of home placement pending the fact finding hearing; Defendants determined that returning the children to the Plaintiffs home would seriously endanger the children's health, safety and welfare; that it is contrary to the welfare of R.L. too remain in or return home; the children had no parent, guardian, or legal custodian to provide supervision for the children and/or release of the child would present a serious threat of substantial harm to the child. DSHS-CPS, the AAG and C.A.S.A. put these reasons in the court order despite knowledge of the two Doctor reports who opined that R.L. and C.L. were "Safe to go Home," that each should "follow up with their pediatrician Charles E Fuchs M.D." Dr. Vuong further noted that there were no "signs of abuse," "no malnourishment," and more generally, "No medical concerns". See Shelter Care Transcript Exhibit 18 .

22

23

24

25
39.    On February 7, 2017 a fact-finding hearing was convened. This was an administrative hearing to make sure there was a GAL. C.A.S.A was appointed for both children. See Fact Finding Transcript Exhibit 18.

26

27

28

29

30
40.    On March 1, 2017 Dr. Fuchs signed an immunization exemption and gave it Joanna Lang for C.L. DSHS-CPS received the Certificate of Exemption from Dr. Fuchs, C.L.'s regular Pediatrician. On March 9th, 2017 C.L. was given shots after DSHS-CPS knew C.L. was exempt from immunizations.

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
1405 Harrison Ave NE, Suite 204
Olympia, Washington 98502
(360) 753-3066

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

The Foster Parents also  fed C.L. meat. Plaintiff, Joanna Lang does not eat meat because they are Jewish. See, Exhibit 30.

41.     Next DSHS-CPS refers Joanna Lang to the Prosecutor's Office for maltreatment of R.L. On June 11, 2018 the Prosecutor found that there is insufficient evidence to pursue prosecution of Joanna Lang. See Exhibit 19.

42.     On March 21, 2017 the Foster Patents, Murlins attempted to take C.L. out of state to visit Six Flags in California. DSHS-CPS and Hsieh was onboard supporting the Foster Parents. Plaintiffs sought to prevent the removal of C.L. from the state. See Exhibit 20. Instead of allowing the children to go home, DSHS-CPS kept C.L. and R.L. separated by sending C.L. to respite care, rather than returning both children home  knowing about  Drs. Fuchs and Vuong's medical reports.

43.     Eight days later, on March 30, 2017, DSHS-CPS and the AAG filed motion to suspend Plaintiffs' visitation with R.L. and C.L.   Dick Lang filed a motion to clarify visitation as it related to R.L. Transcript of the proceedings, March 21, 2017. See Exhibit 21. DSHS-CPS never informed Plaintiffs that their weekly visits were suspended.  Plaintiffs found out when they appeared that Friday at their regular visit with their children. On one occasion the Foster Mother cancelled visit. DSHS did not provide Plaintiff the notes regarding the visitation with Plaintiffs. DSHS-CPS notes would have shown that both children enjoyed visiting with their parents. DSHS-CPS, or Mr. Hsieh did not offer this evidence to the court just like the Doctors' reports from February 2 and 3, 2017 even though they had a duty to do so. Instead, Ms. Kutza, Social Worker refers the matter to an outside agency called the Children Justice Center (CJC) multidisciplinary team.  Dr. Copeland,

COMPLAINT - 16

1
2
3
4

who is a Pediatrician and part of the team, only met with R.L.,  never met with C.L.

DSHS argued that they had concerns for both children, but  DSHS-CPS  separated

the children again referring C.L. to outside services with an organization called

5

Innovative Services, and R.L. to the multidisciplinary team.

6
7
8
9
10
11
12

44.     In the December 15, 2017 hearing the Commissioner ruled that the

State prevailed. This determination was made based upon false information in the

dependency petition and incomplete records.  The Assistant Attorney General

(AAG) nor CPS were candid with the tribunal and failed to disclose the exculpatory

medical examinations. *See Exhibit 22.*

13
14
15
16
17
18
19
20
21

45. On December 21, 2017 C.L. had dental surgery for gingivitis which may

be caused by malnutrition.  Plaintiff has a right to be at C.L.'s medical appointments.

The Foster Mom (Murlin) gave the Dentist consent to perform the dental procedure.

CPS failed to notify the Plaintiffs, Dick or Joanna Lang.   Prior to February 2, 2017

C.L. never had any problems with his teeth, in fact sealants were put on without

anesthesia to protect his teeth from decay.  Since C.L. was in Foster Care (Murlins)

and under DSHS-CPS supervision C.L. had to have surgery.  See, Exhibit 23.

22
23
24
25
26
27
28
29
30

46.     Washington State Policy and DSHS-CPS mission are clear. They

mandate that DSHS-CPS  shall encourage the maximum parent and child and

sibling contact possible, including regular visitation and participation by the parents

in the care of their children in placement, by acting to protect children and

promote healthier families.  DSHS-CPS and the AAG violated that mandate by

not allowing R.L. and C.L to return home, breaking up the Lang family and

separating the children from each other and their parents.

COMPLAINT - 17

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
1405 Harrison Ave NE, Suite 204
Olympia, Washington 98502
(360) 753-3066

47.      C.A.S.A breached its GAL duty toward R.L. and CL. When  Kathy Shirilla read a letter in open Court from Dr. Copeland who opinioned that Plaintiff should have no visitation.  This opinion was rendered despite the fact that Dr. Copeland never saw or treated C.L. and did not appear at the hearing.

48.      Additionally, Kathy Shirilla made false statements of fact when she testified that C.L. changed immensely  over the time frame from being with the foster parents and about C.L. orthodontics.  Her testimony that C.L.'s night terrors (that were never an issue at Plaintiff's home), had stopped. The medical reports said nothing about the issues that Ms. Shirilla under oath, relayed to the Court.   It appears that Ms. Shirilla is advocating DSHS-CPS's position rather than independently reporting in the best  interest of C.L. Based on her breach of her fiduciary duty and the  untrue allegations she offered to the court,  Commissioner Carin Schienberg suspended half of Plaintiffs visits.  Furthermore, C.L.'s "Therapeutic" visits for the family was never scheduled.

49.      During the hearing, R.L. asked for more visits with Parents and to see his brother, C.L., but "the Defendant, Aaron Merino and C.A.S.A. Kathy Shirilla failed to set them up".

50.      Ms. Shirilla, failed to inform the court that C.L. was malnourished when he was in the Murlin's Foster Home. In the pictures, C.L. bones protruding from his chest, ribs, and back, along with numerous other injuries. DSHS-CPS's treatment of C.L. constitutes "abuse and neglect" in violation of RCW 26.44.020(1), RCW 26.44.020(14), WAC 388-15-009, by placing C.L. with these foster parents. See, Exhibit 24.

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
1405 Harrison  Ave NE, Suite 204
Olympia, Washington 98502
(360) 753-3066

51.     DSHS-CPS and C.A.S.A  negligently and unreasonably created a foreseeable risk of harm to C.L. as reported by an Independent Investigator observing Ms. Murlin recklessly driving while C.L. in the car. DSHS-CPS and the AAG had a duty to investigate a December 3, 2017 report from Laura Anderson, an independent Private Investigator hired by Joanna Lang, regarding C.L. but failed in their duty to act upon an independent investigation that involved the Foster Parents Murlins.   See, Exhibit 24. The Cowlitz County Shariff's Department failed to investigate this independent report. See, Exhibit 25

52.     In February 2018 R.L. and C.L. would have been kept out of their home for 12 months.  A permanency plaining hearing shall take place not later than 12 months. No such hearing was convened in violation of RCW 13.34.145.

53.     On March 16, 2017 Foster Parents (Murlins) consulted Dr. Miller to have C.L. restrained at night.  Plaintiff never used restraints on C.L. and was not notified by CPS of restrains. DSHS-CPS or the Foster Mom (Murlins) never produced evidence that C.L. harms himself or C.L. seriously damaged any property.  Dr. Miller approved restraints by stating "may need to be restrained at night".  Use of restraints is a violation of  WAC 388-148-1620. See, Exhibit 25.

54. On June 6, 2017 a wheelchair was prescribed, ordered for C.L., paid for by DSHS and delivered to the Murlins address. Nowhere do any of C.L. records i.e. school records ISNW or other records describe him as "having" any type of wheelchair. See, Exhibit 31.

55.     On June 9, 2017 at a supervised visit, R.L. commented that "he could stay there all day" meaning at the visitation center, because he wanted to be

COMPLAINT - 19

with his parents. The Supervisor heard this comment but omitted it from her report in violation of DSHS-CPS policy.

56.     During a supervised visit at CPS on September 15, 2017, R.L. indicated that "he wants to come home". R.L. expressed this feeling on numerous occasions to different people at Family Solutions and Innovation Services. DSHS-CPS did not return him home and did not record it in the notes in violation of DSHS-CPS policy.

57.     R.L. received threats while in foster care. In November 2017, Mr. Vallembois asked R.L. to come outside of a restaurant. When R.L. was outside, Steve Vallembois said to R.L. 'if you were my kid I would "slap the s--t" out of you!"

58.     DSHS-CPS and the AAG had police report(s) of a child abuse allegation of Foster Parents, (Murlins) and reported that the Foster Parents house caught on fire when they left the children in the home without adult supervision. According to reports, it appears a 9-year-old started the house fire when C.L. was in the Foster home, yet DSHS-CPS failed in their duty to act upon the situation. Instead, Shirilla reported to the court on December 15, 2017 that "there are two trailers" "everything is in order." As a consequence, C.L.'s health deteriorated while he languished for nearly 6 months living in a travel trailer outside the foster care home, that was not in compliance with WAC110-148-1470 which addresses room sizes and living conditions. See, Exhibit 25.

59.     On April 1, 2018 Foster parents Mr. Vallembois and Mr. Howard had R.L. attend a Camp Star Light. R.L. thought it was a summer camp. R.L. had to take a shot before attending the camp. Sometime later, R.L. found out that the

COMPLAINT - 20

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
1405 Harrison Ave NE, Suite 204
Olympia, Washington 98502
(360) 753-3066

camp was for children living with people with HIV or AIDs. R.L. did not have HIV or AIDs, neither do Plaintiffs. R.L. was distraught and upset when he learned this. This was reported to DSHS-CPS and C.A.S.A. but they failed to act to protect R.L. See, Exhibit 26.

60. On May 22, 2018 the Superior Court handed down an Order Denying the Dependency Petition. See, Exhibit 27.

61. After enduring the events from ¶s 16 through 52 above, Dick Lang had only one year with his children. He lost 425 days with his children. When C.L. returned Mr. Lang was hurt because damage the Defendants did to his sons. C.L. and R.L. were home for a year and to this day C.L. still struggles. On June 30th, 2019 Dick Lang died of a stress related conditions proximately caused by DSHS-CPS, AAG, Foster Homes, C.A.S.A, the Police and all other Defendants' conduct. Now, Dick Lang does not have to watch C.L. struggle anymore.

## VI. **CAUSES OF ACTION**

COUNT 1: DEPRIVATION OF PLAINTIFFS CIVIL RIGHTS UNDER §1983

62. Plaintiffs alleges that Defendants DSHS-CPS acting under the "color of state law" deprived Plaintiff civil rights under the 4th amendment right guaranteed by the Constitution of the United States, Article I § 7 of the Washington Constitution, when the Defendants, State Actors, Vancouver PD, entered and searched the Plaintiff's home without a warrant, seized R.L. and C.L. under the dependency order and took property belonging to the Plaintiff.

63. As a direct and proximate cause of the Defendants, deprivation of Plaintiffs' civil rights, Plaintiffs suffered damages, the likes of which are continuing.

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
1405 Harrison Ave NE, Suite 204
Olympia, Washington 98502
(360) 753-3066

1

## COUNT 2: DEPRIVATION OF PLAINTIFF'S PROCEDURAL DUE PROCESS RIGHTS

2

3

64.     Fathers and Mothers should not be deprived of parental rights.

4

Plaintiffs allege that DSHS-CPS breached that duty to investigate the reliability of

5

the referrals on January 31, 2017 before it determined that the allegations were

6

founded on April 3, 2017. *See Exhibits  5 & 6.*

7

8

65.     After the founded finding DSHS-CPS entered the Plaintiffs name

9

into the Central Register Case Management Information System (CAMIS) this

10

system identifies individuals accused of child abuse in the child care field, which

11

12

deprived Plaintiffs of their civil rights in violation of Plaintiffs' 4th amendment right to

13

due process because Plaintiff's liberty interest was imperiled by this procedure.

14

66.     DSHS-CPS knew or should have known that the anonymous

15

referrals were from a person who was declared incompetent to testify in any

16

17

proceeding on December 28, 2017.  See, Exhibit 6.

18

67.     As a direct and proximate cause of the Defendants' deprivation

19

Plaintiffs substantive and procedural rights. Plaintiffs suffered damages, the likes of

20

21

which are continuing.

22

## COUNT 3: VIOLATION OF RCW 26.44.020 (1)

23

68.     Defendant DSHS-CPS has a duty to protect R.L. from child abuse.

24

25

DSHS placed R.L. in a Foster Home with Defendant, Steve Vallembois. On

26

February 5, 2017, while in Foster Care, Mr. Howard, examined R. L.'s body before

27

getting into the shower for marks and bruises, when R.L. had a "specific child

28

abuse examination"  from Dr. Vuong,  who opinioned that there was "no abuse".

29

30

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
1405 Harrison  Ave NE, Suite 204
Olympia, Washington 98502
(360) 753-3066

69.     One evening, in November 2017 Mr. Vallembois asked R.L. to come outside of a restaurant.  When R.L. was outside, Steve Vallembois said to R.L.: 'if you were my kid I would "slap the s--t" out of you!'

70.     As a direct and proximate cause of the Defendants' violation of RCW 26.44.020(1), Plaintiffs suffered damages, the likes of which are continuing for an undetermined amount of time:

        a. Mental pain and suffering;

        b. emotional distress; and

        c. loss of enjoyment of life.

71.     In Washington the right to family association includes the right of parents to make important medical decisions for their children and have those decisions made by their parents rather than the state.  Plaintiffs alleges that the Defendant made important medical decisions for R.L. without the Plaintiffs' consent or notification.  DSHS-CPS and the Foster parent led R.L. to believe that he was going to a camp for foster kids. Before they attended the camp, the foster parent took R.L. to Dr. Eisenfeld who gave R.L. a shot in the arm.  Later, R.L. discovered that the camp was for children with family members living with AIDS or HIV. Neither R.L., nor the Lang family are currently living with AIDS or HIV. *See, Exhibit 27.*

72.     R.L. was also continually threatened while in Foster Care.  On one occasion he was beat up by another foster kid.  The Foster Parents never reported this incident CPS.

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
1405 Harrison Ave NE, Suite 204
Olympia, Washington 98502
(360) 753-3066

73.     As a proximate cause of these events, R.L. was distraught about the camp incident and suffered mental and emotional damages when he was assaulted while in the Foster Home, the likes which are continuing.

## COUNT 4: VIOLATION OF RPC 3.3(c)(f) AND 8.4(d)

74.     Plaintiffs allege that Defendant Dan Hsieh (AAG) is a State Actor. The AAG proceeded with an ex-parte motion supported by a false declaration and negligent investigation seeking an order to remove R.L. and later C.L. from Plaintiff's home. It was signed on February 3rd, 2017, when both DSHS-CPS and the AAG knew about the exculpatory evidence from Dr. Charles E. Fuchs and Dr. Vuong opining that there were no concerns nor any reasonable cause to believe that R.L. and C.L. were in imminent danger. The AAG failed to present this exculpatory evidence to the Court.

75.     Defendants' breached its duty to the Plaintiffs and a direct and proximate cause of the AAG's failure/omission, Defendants violated the above RPC 3.3(c)(f), 8.4(d).   Plaintiffs suffered damages the likes of which are continuing.

## COUNT 5: HARMFUL PLACEMENT

76.     Plaintiffs alleges that Defendants, Foster Parents, Eimiko Murlin and Jeff Ian Murlin had a duty to protect C.L.  Defendants were negligent when taking care of C.L.,  C.L. and other children were left unsupervised when a 9-year-old started a fire that burned the home. C.L. had to stay in motor homes unauthorized by WAC 110-148-1470.

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
1405 Harrison  Ave NE, Suite 204
Olympia, Washington 98502
(360) 753-3066

77.     C.L. was malnourished as you could observe his bones protruding from his chest, ribs, and back, along with numerous other injuries. The State Foster Care system treatment of C.L. constitutes "abuse and neglect" in violation of RCW 26.44.020(1), RCW 26.44.020(14), WAC 388-15-009 and state policy by separating R.L. and C.L. from their parents, then placing both in separate foster parents knowing about the Drs opinions on February 2 & 3 2017.   DSHS-CPS and C.A.S.A negligently and unreasonably created a foreseeable risk of harm to C.L. when Ms. Murlin was observed driving recklessly with C.L. in the automobile. *See,* Exhibit 23.

78.     As a direct and proximate cause of the Defendants violation of the above statutes and regulation, Plaintiff suffered damages, the likes of which are continuing.

## COUNT 6: DEFAMATION

79.     DSHS-CPS reported that Plaintiff, Joanna Lang had mental problems and possible neglect in caring for R.L. and C.L. See, Exhibit 10. All such statements made by the Defendant DSHS-CPS about Plaintiff Joanna Lang were false and were communicated to third parties, placing Plaintiff in a false light in the community which damaged her reputation. This loss of reputation was coupled with DSHS-CPS relying in incompetent evidence to accuse Joanna Lang with child abuse.

80.     Furthermore, Defendant DSHS-CPS (Ms. Gonzalez) falsely reported Plaintiff JoAnna Lang to Adult Protective Services (APS) for allegedly

COMPLAINT - 25

abusing Plaintiff Dick Lang, her husband. APS closed the file deciding that there was no abuse because Mr. Lang did not meet legal criteria as a vulnerable adult.

81.     DSHS referred Joanna Lang to the prosecutor's office for prosecution. On June 11, 2018, the Prosecutor's Office found that there was insufficient evidence to pursue successful prosecution of child abuse against the Plaintiffs.

82.     As a direct and proximate cause of the Defendants, DSHS-CPS communicating false information in reckless disregard of the truth to third parties and referring Jonna Lang for prosecution based on false information placed Plaintiff in a false light in the community.  This conduct by the defendants violated the certification they made to the court in the dependency petition which amounted to perjury.

83.     As a direct and proximate cause Plaintiff suffered damages, the likes of which are continuing.

<u>COUNT 7: WRONGFUL DEATH UNDER RCW 4.20.010</u>

84.     Plaintiff alleges that the relationship between R.L. and C.L. and Dick Lang is of paramount importance and any intervention into the life of the child is also an intervention into the life of the parent.

85.     Plaintiffs allege that the wrongful acts by Defendants DSHS-CPS, AAG, C.A.S.A. breaking up and separating C.L. and R.L. for 425 days caused overwhelming stress on the Plaintiff, Dick Lang.

86.     As a direct and proximate cause of the wrongful acts by Defendants, Dick Lang died on June 30, 2019.

COMPLAINT - 26

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
1405 Harrison Ave NE, Suite 204
Olympia, Washington 98502
(360) 753-3066

87.     Plaintiff Joanna Lang, the minor children R.L. and C.L., suffered damages from losing their dad, the likes of which are continuing.

88.     Plaintiff Joanne Lang, guardian for C.L. and R.L. and the executor of Dick Lang's estate, seeks to redress decedent's damages, including any pain and suffering, loss of love and affection,  between the time of the deprivation of this civil rights by Defendants to the time of his death.

## COUNT 8: NEGLIGENT INVESTIGATION

89.     It is fundamental that the custody, care, and nurturing of a child, first reside in the parents, whose primary function and freedom include preparation of the obligations the state can neither supply nor hinder. It is alleged that Defendant seized Plaintiff's children from their home and placed them in two separate and abusive foster homes. Thus, breaking up the Lang family unit contrary to Statutes  and DSHS-CPS policy.

90.     As a direct and proximate cause of placing R.L. and C. L. in two separate and abusive foster homes, breaking up their family, amounted to a harmful placement decision by DSHS-CPS.  The children and parents  suffered severe emotional damages, the likes of which are continuing.

## COUNT 9: DISCRIMINATION

91.     Plaintiffs Dick and JoAnna are Jewish.  R.L. and C.L. are minority children with special needs.  Plaintiffs allege that the Defendant made their adverse Foster Home placement decision based on a racial and religious animus that was a substantial factor to the removal of R.L. and C.L. from the non-abusive home and placing them in an abusive home.

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
1405 Harrison  Ave NE, Suite 204
Olympia, Washington 98502
(360) 753-3066

92.   As a direct and proximate cause of Defendant's discrimination, Plaintiffs suffered physical and emotional damages, the likes of which are continuing.

## COUNT 10 OUTRAGE

82.  Plaintiff alleges that all defendants conduct was extreme, outrageous and in violation of many state statutes DSHS-CPS policy, Washington State Constitution, and the Rules of Professional Conduct.  Their treatment of the Plaintiffs was utterly intolerable in a civilized society.

83.  As a proximate cause, Plaintiff's suffered severe damages the likes that are still continuing.

## COUNT 11 CONSPIRACY

84.  Plaintiff alleges that all defendants conspired to violate Plaintiff's civil rights, violate State Policy and Statutes, DSHS-CPS policy, Washington State Constitution, the Rules of Professional Conduct as well as municipal ordinances and customs

85.  As a proximate cause, Plaintiff's suffered damages the likes that are continuing.

## COUNT 12. VIOLATION OF THE RACKETEER INFULANCED AND CORRUPT ORGANIZATION ACT (RICO)

86.  Plaintiffs allege that State of Washington, DSHS-CPS, et.al individually named Defendants violated (RICO).  Defendants are individuals that manage care for dependents under Chapter 13 RCW.  The Defendants conspired to kidnap and

COMPLAINT - 28

detain R.L. and C.L. for 425 days by placing them out of their home into separate foster care homes.  See, ¶s 15 to 85 above.

87.  As a direct and proximate cause of the Defendant's conduct, Plaintiff suffered severe and irreversible damages the likes of which is continuing.

## VII. DEMAND

WHEREFORE, the Plaintiff prays for Judgment against all Defendants, as follows:

1.   For any and all relief authorized under the federal statute, state statute, and municipal ordinance.

2.   For general damages in an amount to be determined at the time of trial;

3.   For special damages in an amount to be determined at the time of trial;

4.   For Plaintiff's costs and Attorney's fees;

5.   For punitive damages for the Defendants outrageous and spiteful conduct and retaliation against the Plaintiffs;

6.   Under RICO award up to three times the amount that the Plaintiffs lost;

7.   For leave of Court to amend this Complaint as discovery proceeds;

8.   For injunctive relief enjoining this behavior by all Defendants;

9.   For a protective order against the State of Washington;

10.  Pre-judgment interest; and

11.  For such other relief as the Court deems just and equitable.

DATED this 2l day of January 2020

KEVIN L. JOHNSON, WSBA #24784
Attorney for Plaintiffs

COMPLAINT - 29

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
1405 Harrison Ave NE, Suite 204
Olympia, Washington 98502
(360) 753-3066