THE HONORABLE JUDGE BENJAMIN SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JO ANNA LANG, personal representative
of the estate of DICK LANG, Wife and
Husband, adoptive parents of C.L.,
a minor child, and R.L., a minor child,
JO ANNA LANG, guardian ad litem, for
C.L. and R.L.,

        Plaintiffs,

        PLAINTIFF

v.

STATE OF WASHINGTON,
DEPARTMENT OF SOCIAL AND
HEALTH SERVICES (DSHS), CHILD

PROTECTIVE SERVICES (CPS), et al.,

        Defendants.

Case No.: 3:20-cv-05057

PLAINTIFFS'
RESPONSE TO CITY
OF VANCOUVER

PLAINTIFFS' CROSS
MOTION FOR
JUDGMENT ON
THE PLEADINGS

NOTICE ON MOTION
CALENDAR:

August 4, 2020

Plaintiff's Motion for Judgment on the Pleadings  - 1

Kevin L. Johnson, P.S., Attorney at Law
Westside Business Plaza
1401 Harrison Ave., Suite 204
Olympia, Washington 98502
(360) 753-3066
(360) 705-9377

**INTRODUCTION**

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the Plaintiffs in this action, by Kevin L. Johnson, their attorney, move the Court for judgment on the pleadings in their favor and against the Defendant City of Vancouver, on the ground that it appears from the face of the pleadings that the Plaintiffs are entitled to a judgment awarding them the relief claimed in their complaint, based on the pleadings and all other papers and records of this action.

Among the Defendants named in this action is the City of Vancouver, Washington, whose police officers played a key role in the violation of the Plaintiffs' rights under federal and state law. As alleged in the First Amended Complaint, which is incorporated here by reference, the violations of the Plaintiffs' rights were caused by a custom or policy of the City of Vancouver.

In keeping with *Monell v. Department of Social Services of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), and its progeny, the Ninth Circuit has ruled that a district court did not abuse its discretion by denying a county's motion to set aside a *Monell* verdict finding a supervising social worker, who ordered children removed from the parents' home without a warrant, liable for violation of the parents' Fourth Amendment rights, and a county liable for failing to adequately train its social workers, since social workers would not have removed children from home unless supervisor ordered them to do so. *Lewis v. County of San Diego*, 798 F. App'x 58 (9th Cir. 2019) (unpublished opinion; not

Plaintiff's Motion for Judgment on the Pleadings  - 2

Kevin L. Johnson, P.S., Attorney at Law
Westside Business Plaza
1401 Harrison Ave., Suite 204
Olympia, Washington 98502
(360) 753-3066
(360) 705-9377

binding precedent, but may be cited, pursuant to Ninth Circuit Rule 36-3(b), because date of opinion is after January 1, 2007). *See also J.B. v. Washington County*, 127 F.3d 919 (10th Cir. 1997) (county sheriff's decision to remove home-schooled child from her home to obtain interview with child outside of her parents' presence during investigation of suspected child abuse was "policy, procedure or custom" of county, as required to support parent's civil rights claim); *D.C. by & through Cabelka v. County of San Diego*, No. 18-CV-13-WQH-MSB, 2020 WL 1674583 (S.D. Cal. Apr. 6, 2020) (foster mother sufficiently alleged that county had policy or custom that caused alleged violations of Adoption Assistance and Child Welfare Act, as required to state § 1983 municipal liability claim against county based on violation of Act's provisions requiring case review system to ensure that child's health and education record was supplied to foster parent and that there was case plan for assuring that services were provided to child and foster parents; allegations included that county had several policies, customs, or practices that caused violations of foster mother's federal rights, including misrepresenting foster children's history in order to attain placement); *B.S. v. Somerset County*, 704 F.3d 250 (3d Cir. 2013) (county was accountable under § 1983 to mother where county had a custom of removing children from a parent's home when abuse is suspected without conducting a prompt post-removal hearing if another parent could take custody); *Gedrich v. Fairfax Cty. Dep't of Family Servs.*, 282 F. Supp. 2d 439 (E.D. Va. 2003) (municipal policies or customs could have proximately caused alleged constitutional violations connected with removal of child from her home, as required for municipality to be liable under § 1983, inasmuch as alleged

Kevin L. Johnson, P.S., Attorney at Law
Westside Business Plaza
1401 Harrison Ave., Suite 204
Olympia, Washington 98502
(360) 753-3066
(360) 705-9377

policy of severing contact between children and families, or failure to properly train county employees, could have caused county child protective services worker to institute "no parental contact" restriction); *People United for Children, Inc. v. City of New York*, 108 F. Supp. 2d 275 (S.D.N.Y. 2000) (city could be held liable under § 1983 for deprivations of constitutional rights of parents and guardians whose children were removed from their homes as result of city's purported policy of resolving ambiguities in child abuse investigations in favor of finding that abuse had occurred).

Under the same reasoning as was applied in *Lewis* and the above-cited cases, the City of Vancouver has liability for the unlawful actions committed by its employees that resulted in the deprivation of the Plaintiffs' rights, which are discussed *infra*.

## ARGUMENT

## I. STANDARDS FOR MOTION FOR JUDGMENT ON THE PLEADINGS

Judgment on the pleadings under Rule 12(c) is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law. *Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032 (9th Cir. 2008).

In deciding a motion for judgment on the pleadings filed by a plaintiff, the court considers allegations of fact admitted or not controverted in the pleadings, so that only questions of law remain to be decided by the district court. *Swepi, LP v.*

Kevin L. Johnson, P.S., Attorney at Law
Westside Business Plaza
1401 Harrison Ave., Suite 204
Olympia, Washington 98502
(360) 753-3066
(360) 705-9377

*Mora County, N.M.*, 81 F. Supp. 3d 1075 (D.N.M. 2015).

## II. THE DEFENDANTS, INCLUDING THE CITY OF VANCOUVER, VIOLATED THE FOURTH AMENDMENT RIGHTS OF THE PLAINTIFFS

The Fourth Amendment protection against unreasonable searches and seizures is applicable here to the unwarranted removal of C.L. and R.L. from their home, where they lived with their adoptive parents, Dick Lang and Jo Anna Lang (together, the "Langs"), and to the unwarranted removal of property from the home.

A mother and her minor daughter pleaded a plausible claim under § 1983 against a state child protective services case worker for violation of their constitutional rights to familial association by alleging that the case worker detained the daughter at a hospital, had hospital staff inform the mother that she could not have contact with her daughter or take her home, issued a temporary custody notice, and transported the daughter strapped to a gurney by ambulance to a residential mental health facility, where she was held without the mother's consent or a court order. *Keates v. Koile*, 883 F.3d 1228 (9th Cir. 2018). As in the instant case, the claim in *Keates* was that the case worker did not undertake a reasonable investigation as to whether the daughter was in imminent danger due to her mother's presence, nor attempt to corroborate an alleged call from "someone" at the hospital that the daughter had attempted suicide after the mother and daughter denied that there had been any such attempt or that she was actively suicidal. The allegations were that the case worker had sufficient time to obtain a warrant but failed to do so and that there was no basis for preventing the mother from having contact with her

Plaintiff's Motion for Judgment on the Pleadings - 5

Kevin L. Johnson, P.S., Attorney at Law
Westside Business Plaza
1401 Harrison Ave., Suite 204
Olympia, Washington 98502
(360) 753-3066
(360) 705-9377

daughter.

In like manner, in the instant case, there was ample time for the Defendants to seek and obtain, if they could, a warrant, but the Defendants failed to do so, without good cause. The Defendant social workers for the State of Washington and the City of Vancouver police officers had no warrant but nonetheless appeared at the Langs' home on multiple occasions and ultimately caused their children to be removed from the home for 425 days, without good cause.

The Ninth Circuit in *Keates* also stated that the claims of children who are taken into state custody, as distinct from parents, are analyzed under the Fourth Amendment right to be free from unreasonable seizures rather than under the Fourteenth Amendment right to familial association. *Id*. at 1236 (citing *Kirkpatrick v. County of Washoe*, 792 F.3d 1184, 1189 (9th Cir. 2015), *on reh'g en banc*, 843 F.3d 784 (9th Cir. 2016)). Despite the different constitutional source of the right, the Ninth Circuit has held that "the same legal standard applies in evaluating Fourth and Fourteenth Amendment claims for the removal of children." *Wallis v. Spencer*, 202 F.3d 1126, 1137 n.8 (9th Cir. 1999).

As found by the court in *Mikich v. City & County of San Francisco*, 612 F. App'x 443 (9th Cir. 2015) (citable unpublished opinion), no reasonable social worker would have believed it was lawful to remove the parents' infant daughter from their care without first obtaining a warrant, and, therefore, county social workers were not entitled to qualified immunity in the parents' § 1983 action for violation of their Fourth Amendment rights, where it was clearly established law that, in order for a warrantless

Kevin L. Johnson, P.S., Attorney at Law
Westside Business Plaza
1401 Harrison Ave., Suite 204
Olympia, Washington 98502
(360) 753-3066
(360) 705-9377

removal based on exigent circumstances to be lawful, a social worker must have reasonable cause to believe that the child is likely to experience serious bodily harm in the time that would have been required to obtain a warrant. The infant in *Mikich* was not in imminent danger until released from the hospital following her birth, and the decision to remove the infant was made over 24 hours before her discharge, giving social workers time to obtain a warrant before the infant's discharge. Here, there was no reasonable cause to believe that C.L. or R.L. were in imminent danger such that there was no time to obtain a warrant.

In *Franet v. County of Alameda Social Services Agency*, 291 F. App'x 32 (9th Cir. 2008) (citable unpublished opinion), compensatory damages of $170,000 were justified in a mother's § 1983 action against a social worker for her warrantless removal of the children from the mother's home. The social worker believed the children's custody-sharing father was sexually molesting a daughter. At the time of removal, the children were not due to return to the father's custody for several days, the mother had a medical appointment for the daughter scheduled for the afternoon of the removal, the social worker admitted she had time to obtain a warrant, and nothing suggested that the father had abused the son. Reversing the district court's decision to grant the county judgment as a matter of law, the court in *Franet* also found that the issues of whether the county had an unconstitutional policy of removing children from their homes without warrants in the absence of emergency circumstances, or whether the county had failed to train its social workers on what constituted an emergency, were questions for the jury.

Kevin L. Johnson, P.S., Attorney at Law
Westside Business Plaza
1401 Harrison Ave., Suite 204
Olympia, Washington 98502
(360) 753-3066
(360) 705-9377

In another case, it was found that a reasonable social worker would have understood that children who were alert and active, despite their apparent malnutrition and one child's bottle rot, did not face the imminent risk of bodily injury required under clearly established law for the children to be removed from the parents' home without a warrant, and, therefore, the county social worker who removed the children from the home without a warrant was not entitled to qualified immunity from § 1983 liability for the resulting due process and Fourth Amendment violations. *Rogers v. County of San Joaquin*, 487 F.3d 1288 (9th Cir. 2007). In *Rogers*, the exigent circumstances required under the Fourth Amendment and due process principles for a social worker to remove the children from the home without a warrant did not exist. In the instant case, the same conclusion is required as there was much less, if any, factual support for any conclusion that the children were in imminent danger.

In *Fredenburg v. County of Santa Clara*, 407 F. App'x 114 (9th Cir. 2010) (citable unpublished opinion), a police officer had reasonable cause to remove the children from the mother, but he failed to determine or even consider whether the father posed a threat to the children before removing the children from the father and placing them with a social worker. This precluded the officer's claim for qualified immunity. *Fredenburg* illustrates that separate determinations must be made as to each parent on the issue of reasonable cause to remove the children. In this case, there was no such just cause as to either of the Langs.

In *Greene v. Camreta*, 588 F.3d 1011 (9th Cir. 2009), *vacated in part concerning Fourth Amendment claim on mootness grounds*, 563 U.S. 692, 131 S. Ct. 2020, 179 L.

Kevin L. Johnson, P.S., Attorney at Law
Westside Business Plaza
1401 Harrison Ave., Suite 204
Olympia, Washington 98502
(360) 753-3066
(360) 705-9377

Ed. 2d 1118 (2011), *and* 661 F.3d 1201 (9th Cir. 2011), a two-hour interview of a minor

at school by a case worker was found to be a "seizure" for Fourth Amendment purposes.

In addition, the exigent circumstances exception to the Fourth Amendment warrant

requirement did not apply to the seizure of the child by the protective services caseworker

and a deputy sheriff where they waited three days to detain and interrogate the child after

receiving an initial report from a state agency and then returned the child to her parents'

custody after the allegedly incriminating interview. *Id.* at 1030.

As is true of the instant case, in *Greene*, law enforcement personnel and purposes

were too deeply involved in the seizure and interrogation conducted by a child protective

services caseworker of the child, who was a suspected abuse victim, to permit application of

the "special needs" doctrine to suspend the Fourth Amendment's warrant or probable cause

requirements. Police were conducting an ongoing investigation of allegations of child sexual

abuse against the child's father, the caseworker had requested that a deputy sheriff, who was

a uniformed officer carrying a visible firearm, accompany him to the interview, which might

have "facilitated" the interview, and under state law, child protective services investigations

were intimately intertwined with law enforcement. *Id.* at 1027-28.

A warrantless entry into an arrestee's home did not come within the emergency

exception to the warrant requirement in *Walker v. King County*, 376 F. App'x 704 (9th Cir.

2010) (citable unpublished opinion), and, thus, county officers were not entitled to

qualified immunity from suit in an action against them based on unreasonable search and

arrest. The officers were acting in response to an allegation of child abuse to determine

Kevin L. Johnson, P.S., Attorney at Law
Westside Business Plaza
1401 Harrison Ave., Suite 204
Olympia, Washington 98502
(360) 753-3066
(360) 705-9377

whether the arrestee was a felon in possession of a firearm. As found by the federal district court, which decision was affirmed by the Ninth Circuit, the officers arrived at the arrestee's home to investigate the allegations three days after the allegations were reported to child protective services and over 20 hours after a detective was informed of the accusations. No attempt was made to obtain a warrant even though there was ample time, child protective services had designated the referral only as a "moderate risk," and when the detective approached the house, she saw the child watching television and could see that he was fine. *Walker v. King County*, 630 F. Supp. 2d 1285, 1291 (W.D. Wash. 2009).

As for the personal property in the instant case that was taken by the Defendants from the Langs' home, ordinarily, seizure of personal property is per se unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant that is issued upon probable cause and it particularly describes the items to be seized. *United States v. Place*, 462 U.S. 696, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983). In *Place*, agents made a "seizure" of a traveler's luggage for purposes of the Fourth Amendment when, following his refusal to consent to a search, one of the government agents told the traveler that he was going to take the luggage to a federal judge to secure the issuance of a search warrant. The 90-minute detention of the luggage was sufficient in itself to render the seizure unreasonable. *See also State v. York*, 11 Wash. App. 137, 521 P.2d 950 (1974) (where police officers received from motel owner and his wife an expression of their suspicion that the various items of personal property contained in defendant's motel room were stolen property and they produced no evidence

Kevin L. Johnson, P.S., Attorney at Law
Westside Business Plaza
1401 Harrison Ave., Suite 204
Olympia, Washington 98502
(360) 753-3066
(360) 705-9377

of known criminal activity, officer acted illegally in searching room and seizing property without a warrant).

## III.   THE DEFENDANTS, INCLUDING THE CITY OF VANCOUVER, VIOLATED THE SUBSTANTIVE DUE PROCESS RIGHTS OF THE PLAINTIFFS

A parent has a fundamental liberty interest in companionship with his or her child, and a state may not interfere with this liberty interest. The violation of the right to family integrity is subject to remedy under § 1983. *Rosenbaum v. Washoe County*, 663 F.3d 1071 (9th Cir. 2011). Unwarranted state interference with the relationship between a parent and a child violates substantive due process.

As stated in RCW 26.33.260(1), upon the entry of a decree of adoption, "[t]he adoptee shall be, to all intents and purposes, and for all legal incidents, the child, legal heir, and lawful issue of the adoptive parent, entitled to all rights and privileges, including the right of inheritance and the right to take under testamentary disposition, and subject to all the obligations of a natural child of the adoptive parent."

Because parents' fundamental right in the care, custody, and management of their child is protected as a matter of substantive due process under the Fourteenth Amendment, any state interference with the right of parenting must be subjected to strict scrutiny and is justified only if the state can show that it has a compelling interest and that such interference is narrowly drawn to meet only the compelling state interest involved. *In re Welfare of H.Q.*, 182 Wash. App. 541, 330 P.3d 195 (2014).

Moreover, the standard for deprivation of familial companionship in violation of

Kevin L. Johnson, P.S., Attorney at Law
Westside Business Plaza
1401 Harrison Ave., Suite 204
Olympia, Washington 98502
(360) 753-3066
(360) 705-9377

the Fourteenth Amendment is unwarranted interference, not the more demanding standard requiring conduct that shocks the conscience. *Crowe v. County of San Diego*, 608 F.3d 406 (9th Cir. 2010) (genuine issue of material fact as to whether placement of juveniles in protective custody following the murder of their sister was warranted under California law precluded summary judgment on claim by juveniles' parents that such placement denied them their Fourteenth Amendment rights to familial companionship). This is a critical distinction, as in the instant case, the Plaintiffs can show unwarranted interference with their familial relationships, regardless of whether or not that interference can be described as shocking to the conscience.

In *Mabe v. San Bernardino County*, 237 F.3d 1101 (9th Cir. 2001), material issues of fact existed as to whether a child faced an immediate threat of serious physical injury when she was removed from her mother's home without a warrant and, thus, whether a reasonable social worker could have believed that such removal was lawful. Government officials are required to obtain prior judicial authorization before intruding on a parent's custody of her child unless they possess information at the time of the seizure that establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury. *Id.* at 1106 (citing *Wallis*, 202 F.3d 1126 (material fact issues existed as to whether information in possession of police officers, including institutionalized mental patient's statement that the father was planning to ritually sacrifice his son to Satan, gave officers reasonable cause to believe that son and daughter faced immediate threat of serious physical injury or death, thus precluding summary judgment in parents' and children's action against city; the parents alleged that removal of children without a court

Kevin L. Johnson, P.S., Attorney at Law
Westside Business Plaza
1401 Harrison Ave., Suite 204
Olympia, Washington 98502
(360) 753-3066
(360) 705-9377

order interfered with their right of family association and right against unreasonable search and seizure, and material fact issues existed as to whether police officers' action of removing children from their mother and detaining them for more than two months exceeded permissible scope of action necessary to protect them from alleged immediate threat)).

In *Anderson-Francois v. County of Sonoma*, 415 F. App'x 6 (9th Cir. 2011) (unpublished opinion; not binding precedent, but may be cited, pursuant to Ninth Circuit Rule 36-3(b)), a county social worker was not entitled to qualified immunity from liability for her alleged conduct in providing input into the decision to effect a warrantless removal of foster children from the foster parent's home, in the foster parent's § 1983 claim. As the primary investigator, the social worker allegedly knew that the evidence of abuse was contradicted and that the most recent instance of confirmed abuse was several months prior to the removal date. The same result obtained for a police detective defendant in that case.

Qualified immunity did not apply to shield a social worker from a father's § 1983 claim alleging interference with his Fourteenth Amendment right to familial association where the social worker removed the father's child from the family home over the father's express objection without a warrant and without an imminent risk of serious bodily harm, such that if the father's cognizable evidence was believed, the social worker violated the father's clearly established rights and no objective social worker could have believed that her conduct was lawful. *Bhatti v. County of Sacramento*, 281 F. App'x 764 (9th Cir. 2008) (citable unpublished opinion). The same result is required here.

Kevin L. Johnson, P.S., Attorney at Law
Westside Business Plaza
1401 Harrison Ave., Suite 204
Olympia, Washington 98502
(360) 753-3066
(360) 705-9377

## IV.   THE DEFENDANTS, INCLUDING THE CITY OF VANCOUVER, VIOLATED THE PROCEDURAL DUE PROCESS RIGHTS OF THE PLAINTIFFS

The right to live with and not be separated from one's immediate family is a right that ranks high among the interests of the individual and cannot be taken away without procedural due process. *Ching v. Mayorkas*, 725 F.3d 1149 (9th Cir. 2013). Parents have a procedural due process claim when, as occurred here, a state official removes a child from the parents without their consent and without a court order unless the information at the time of the seizure, after reasonable investigation, establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury, and the scope, degree, and duration of the intrusion are reasonably necessary to avert the specific injury at issue. *Chen v. D'Amico*, 428 F. Supp. 3d 483 (W.D. Wash. 2019), *on reconsideration in part*, No. C16-1877JLR, 2020 WL 363354 (W.D. Wash. Jan. 22, 2020).

To accord with procedural due process, parents of a child removed on an emergency basis must be given notice of a post-deprivation hearing. *Mueller v. Auker*, 576 F.3d 979 (9th Cir. 2009). In addition, parents generally have a procedural due process right to a judicial hearing if the state seeks to compel their minor child to undergo a medical treatment over their objection. *Id.* at 995. These and other procedural safeguards were not provided for the Langs when their children were taken from their home.

A county social worker's alleged action of referring a four-year-old child for a medical sexual abuse examination without obtaining parental consent or a court order and absent an urgent medical condition or risk of losing evidence, if proven, violated the father's and the child's Fourteenth Amendment rights to family association and procedural

Plaintiff's Motion for Judgment on the Pleadings - 14

Kevin L. Johnson, P.S., Attorney at Law
Westside Business Plaza
1401 Harrison Ave., Suite 204
Olympia, Washington 98502
(360) 753-3066
(360) 705-9377

due process in the case of *Doe v. Lebbos*, 348 F.3d 820 (9th Cir. 2003), *overruled on other grounds by Beltran v. Santa Clara County*, 514 F.3d 906 (9th Cir. 2008).

Although, in the instant case, the Plaintiffs were not permanently deprived of their children in a termination proceeding, they were deprived of their children for 425 days. Thus, it is instructive that notice, open testimony, time to prepare and respond to charges, and a meaningful hearing before a competent tribunal in an orderly proceeding meet constitutional procedural due process guarantees in a proceeding to terminate parental rights. *See In re Moseley*, 34 Wash. App. 179, 660 P.2d 315 (1983).

**V.    THE PLAINTIFFS HAVE A NEGLIGENT INVESTIGATION CLAIM FOR VIOLATION OF RCW 26.44.020(1) AND 26.44.050 AGAINST THE DEFENDANTS, INCLUDING THE CITY OF VANCOUVER**

In *Chen*, genuine issues of material fact as to (1) whether a Child Protective Services ("CPS") investigator's failure to discuss a severely malnourished child's care with his remaining treatment providers prior to a shelter care hearing constituted a material failure to interview collateral sources, and (2) whether the investigator's erroneous determination that the mother had failed to take the child to an emergency department was the result of the CPS investigator's negligence or of another cause precluded entry of summary judgment on a private cause of action asserted by the parents based on the alleged improper removal of the child from their home. The action was brought pursuant to RCW 26.44.050, which requires the police and employees of the Department of Social and Health Services ("DSHS") to use reasonable care when investigating allegations of child abuse or neglect. The court's discussion of the

Kevin L. Johnson, P.S., Attorney at Law
Westside Business Plaza
1401 Harrison Ave., Suite 204
Olympia, Washington 98502
(360) 753-3066
(360) 705-9377

requirements for a cause of action based on RCW 26.44.050 is comprehensive and

warrants being quoted at some length, including its discussion of prior case law:

> There is no common-law cause of action for negligent investigation under Washington law. *Ducote v. State, Dep't of Soc. & Health Servs.*, 144 Wash. App. 531, 186 P.3d 1081, 1082 (2008), *aff'd*, 167 Wash. 2d 697, 222 P.3d 785 (2009) (citing *Dever v. Fowler*, 63 Wash. App. 35, 816 P.2d 1237 (1991)). However, the Washington Supreme Court has determined that RCW 26.44.050 creates a private right of action based on "DSHS's statutory duty to investigate child abuse." *See id.* (citing *Bennett v. Hardy*, 113 Wash. 2d 912, 784 P.2d 1258 (1990); *Tyner v. Dep't of Soc. & Health Servs.*, 141 Wash. 2d 68, 1 P.3d 1148 (2000)). That statute provides:

> > [U]pon the receipt of a report concerning the possible occurrence of abuse or neglect, the law enforcement agency or the department must investigate and provide the protective services section with a report in accordance with chapter 74.13 RCW, and where necessary to refer such report to the court.

> RCW 26.44.050.

> "A negligent investigation claim is available only when law enforcement or DSHS conducts an incomplete or biased investigation that 'resulted in a harmful placement decision.'" *McCarthy v. County of Clark*, 193 Wash. App. 314, 329, 376 P.3d 1127, 1134 (2016) (quoting *M.W. v. Dep't of Soc. & Health Servs.*, 149 Wash. 2d 589, 602, 70 P.3d 954, 955 (2003)). "A harmful placement decision includes 'removing a child from a nonabusive home, placing a child in an abusive home, or letting a child remain in an abusive home.'" *Id.* (quoting *M.W.*, 149 Wash. 2d at 602, 70 P.3d at 960). To prevail on a negligent investigation claim, "the claimant must prove that the allegedly faulty investigation was a proximate cause of the harmful placement." *See Petcu v. State*, 121 Wash. App. 36, 56, 86 P.3d 1234, 1244 (2004).

> "A negligent investigation may be the cause in fact of a harmful placement even when a court order imposes that placement." *McCarthy*, 376 P.3d at 1135 (citing *Tyner*, 1 P.3d at 1156). "Liability in this situation depends upon what information law enforcement or DSHS provides to the court." *Id.* (citing *Tyner*, 1 P.3d at 1157-58). "A court order will act as a superseding cause that cuts off liability 'only if all material information has been presented to the court.'" *Id.* (quoting *Tyner*, 1 P.3d at 1158 (holding that whether a social worker failed to inform the court that he had

Kevin L. Johnson, P.S., Attorney at Law
Westside Business Plaza
1401 Harrison Ave., Suite 204
Olympia, Washington 98502
(360) 753-3066
(360) 705-9377

1
2
3

determined the allegations against a parent were unfounded was a material question of fact for the jury)). Additionally, the materiality of an investigator's failure to interview "key collateral sources" is a question of fact for the jury. *See id.* at 1158-59.

4
5
6
7
8
9
10
11
12

In addition to concealment of a material fact, "negligent failure to discover information may subject the State to liability even after adversarial proceedings have begun." *Id.* at 1156. In *Tyner*, the Washington Supreme Court reversed a grant of summary judgment for a social worker where the social worker determined that the allegations against the plaintiff were unfounded, concluding that the fact that the social worker reached this conclusion was "a fact that might have been relied on by the court in making its decision." *See id.* at 1158. The court also found that whether the caseworkers' alleged failure to "interview collateral sources, and in turn fail[ure] to deliver the information to the court that these sources would have provided" were material facts was a question for the jury. *See id.* at 1158-59.

13

*Chen*, 2020 WL 363354, at *7-8.

14
15
16
17
18
19
20
21

Here, a negligent investigation claim derived from RCW 26.44.050 can be sustained. The DSHS-CPS Defendants and the law enforcement Defendants did not use reasonable care in investigating the allegations against the Langs. They conducted an incomplete and/or biased investigation that proximately resulted in a harmful placement decision for C.L. and R.L. In particular, among other acts and omissions, these Defendants on multiple occasions suppressed the exculpatory opinions from two different physicians.

22
23
24
25
26
27

In the opinion on reconsideration in *Chen*, the court ruled that, in light of RCW 4.24.595(1), the plaintiff must show gross negligence by the defendants to support a cause of action based on RCW 26.44.050. *Chen*, 2020 WL 363354, at *11. RCW 4.24.595(1) states as follows:

28
29
30

(1) Governmental entities, and their officers, agents, employees, and volunteers, are not liable in tort for any of their acts or omissions in emergent placement investigations of child abuse or neglect under chapter 26.44 RCW including, but not limited to, any determination to leave a child with a parent, custodian, or guardian, or to return a child to a parent,

Kevin L. Johnson, P.S., Attorney at Law
Westside Business Plaza
1401 Harrison Ave., Suite 204
Olympia, Washington 98502
(360) 753-3066
(360) 705-9377

custodian, or guardian, unless the act or omission constitutes gross negligence. Emergent placement investigations are those conducted prior to a shelter care hearing under RCW 13.34.065.

This law became effective on June 7, 2012. *Chen*, 2020 WL 363354, at *9. The court in *Chen* added:

> The Washington State Supreme Court defines gross negligence as "the failure to exercise slight care." *Harper v. State*, 429 P.3d 1071, 1076 (Wash. 2018) (*quoting Nist v. Tudor*, 407 P.2d 798, 803-04 (1965)). "Slight care" means "not the total absence of care but care substantially or appreciably less than the quantum of care adhering in ordinary negligence." *See Nist*, 407 P.2d at 804. "In determining the degree of negligence, the law must necessarily look to the hazards of the situation confronting the actor." *Id.*

*Id.* at *12.

In the instant case, the Plaintiffs can show the necessary gross negligence on the part of the DSHS-CPS Defendants and the law enforcement Defendants.

In *McCarthy v. County of Clark*, 193 Wash. App. 314, 376 P.3d 1127 (2016), the father and sons brought a negligent investigation action against the county and others. There was a genuine issue of material fact as to whether a sheriff's deputy's investigation into a child abuse allegation by a father's former wife was negligent. This precluded summary judgment for the county.

In *Tyner v. State Department of Social & Health Services*, 141 Wash. 2d 68, 1 P.3d 1148 (2000), a court's issuance of no-contact orders separating a father from his children during a child abuse investigation was not a superseding, intervening cause of harm to the father, as required to preclude liability of the DSHS for negligent investigation, where reasonable minds could differ as to whether all material information was presented to the court prior to the issuance of the orders. In a manner much like the

Kevin L. Johnson, P.S., Attorney at Law
Westside Business Plaza
1401 Harrison Ave., Suite 204
Olympia, Washington 98502
(360) 753-3066
(360) 705-9377

occurrences in the instant case, a DSHS caseworker who controlled the flow of information to the court that issued the orders failed both to inform the issuing court that he had determined that allegations of abuse were unfounded and to interview collateral sources and present their information to the issuing court.

## VI. THE DEFENDANTS, INCLUDING THE CITY OF VANCOUVER, ARE LIABLE FOR THE WRONGFUL DEATH OF DICK LANG

RWC 4.20.010, provides as follows:

(1) When the death of a person is caused by the wrongful act, neglect, or default of another person, his or her personal representative may maintain an action against the person causing the death for the economic and noneconomic damages sustained by the beneficiaries listed in RCW 4.20.020 as a result of the decedent's death, in such amounts as determined by a trier of fact to be just under all the circumstances of the case.

(2) This section applies regardless of whether or not the death was caused under such circumstances as amount, in law, to a felony.

In determining a cause of death for which recovery is sought, the jury may fix liability on the defendant where the evidence is sufficient for reasonable people to conclude that there is a greater probability that the death was the result of causes contributed by the defendant than another cause. *Hessler v. Moore*, 188 Wash. 80, 61 P.2d 1001 (1936).

The focus of legal causation analysis is whether, as a matter of policy, the connection between the ultimate result and the act of the defendant is too remote or insubstantial to impose liability, and that determination depends upon mixed considerations of logic, common sense, justice, policy, and precedent. *Estate of Shinaul M. v. State Dep't of Soc. & Health Servs.*, 96 Wash. App. 765, 980 P.2d 800 (1999).

Kevin L. Johnson, P.S., Attorney at Law
Westside Business Plaza
1401 Harrison Ave., Suite 204
Olympia, Washington 98502
(360) 753-3066
(360) 705-9377

1   As applied in *Estate of Shinaul M.*, these considerations led the court to conclude that the

2

3   estate of a developmentally disabled foster child who died as a result of being put in

4   restraints at a group home could establish that the actions of a caseworker for the DSHS

5   were a legal cause of the child's death. Though a guardian and doctors made the actual

6

7   decision to place the child in the group home, causation could be established if the estate

8   could prove that the caseworker gave materially misleading information that caused the

9

10   decision. *Id.* at 770-71, 980 P.2d at 804.

11       In this case, the acts and omissions of the Defendants, including the City of

12

13   Vancouver, in leveling false accusations against the Langs, in causing the removal of their

14   children from the Lang home, and in subjecting those children to dangerous and abusive

15

16   conditions in foster homes, led directly to extremely high stress and anxiety for Dick Lang,

17   and to his death. At the very least there are fact questions to be determined by a jury.

18       The Ninth Circuit in *Estate of Darulis v. Garate*, 401 F.3d 1060 (9th Cir. 2005),

19

20   considered and made no disapproving statements on the death of an Ohio resident, whose

21   death was allegedly caused by distress incurred when the decedent's son was unlawfully

22   arrested by California police officers in California. The father's distress in *Garate* led to a

23

24   heart attack, which caused his death.

25       The Supreme Court of Washington held that the question of a causal relationship

26

27   between an automobile accident, wherein the deceased suffered a fractured sternum and

28   other injuries, and his death due to heart failure was for a jury to resolve in view of

29   medical testimony that the accident was the exciting cause or trigger that set off a

30

mechanism that was already there, *Gregory v. Shannon*, 59 Wash. 2d 201, 367 P.2d 152

Kevin L. Johnson, P.S., Attorney at Law
Westside Business Plaza
1401 Harrison Ave., Suite 204
Olympia, Washington 98502
(360) 753-3066
(360) 705-9377

(1961); *see also Cunningham v. Dills*, 19 Wash. 2d 845, 145 P.2d 273 (1944) (in death action, evidence was sufficient to take to jury question of whether decedent's death from coronary thrombosis was directly caused by injuries resulting from automobile collision). In those cases, as in this case, the defendants' negligence created the conditions for, and legally caused, the death of the decedents.

## VII.   THE DEFENDANTS, INCLUDING THE CITY OF VANCOUVER, DISCRIMINATED AGAINST THE PLAINTIFFS BASED ON RACE AND RELIGION

The Defendants, especially but not only the DSHS-CPS Defendants, discriminated against the Langs, who are Jewish, and R.L. and C.L., who are their racial minority children, by using race to make the decision to remove the children from the Langs' home and place them with foster parents of a different religion and race, to the detriment of all of the Plaintiffs. There was no justification, much less a compelling one, for allowing religion and race to guide these actions.

The fact that race is a factor in a government decision is sufficient to trigger strict scrutiny under the Equal Protection Clause. *Mitchell v. Washington*, 818 F.3d 436 (9th Cir. 2016) (under strict scrutiny review, medical supervisor at state special commitment center violated civilly committed sex offender's equal protection rights when he considered offender's race in deciding to not give him specific drug regimen to medically treat his Hepatitis C). Strict scrutiny of racial classification under the Equal Protection Clause is a searching examination, and the government bears the burden to prove that reasons for the classification are clearly identified and unquestionably legitimate. *Fisher*

Plaintiff's Motion for Judgment on the Pleadings - 21

Kevin L. Johnson, P.S., Attorney at Law
Westside Business Plaza
1401 Harrison Ave., Suite 204
Olympia, Washington 98502
(360) 753-3066
(360) 705-9377

*v. Univ. of Tex. at Austin*, 570 U.S. 297, 133 S. Ct. 2411, 186 L. Ed. 2d 474 (2013).

Constitutional requirements of equal protection prohibit courts from relying on race to make decisions regarding child custody in particular. *In re Marriage of Olson*, 2008 MT 232, 344 Mont. 385, 194 P.3d 619. For example, in *McLaughlin v. Pernsley*, 693 F. Supp. 318 (E.D. Pa. 1988), *aff'd*, 876 F.2d 308 (3d Cir. 1989), a city's decision to remove a black child from the care of white foster parents and place him in long-term foster care with black foster parents, solely on the basis of race, violated the equal protection rights of the child and the white foster parents.

Conduct that is based on religious rights is similarly a distinction based on a suspect classification, also requiring strict scrutiny review of whether the conduct violates the Equal Protection Clause. *Spirit of Aloha Temple v. County of Maui*, 409 F. Supp. 3d 889 (D. Haw. 2019). Under the Equal Protection Clause, heightened scrutiny is appropriate when governmental action interferes with a person's fundamental rights, such as freedom of religion. *Vision Church v. Village of Long Grove*, 468 F.3d 975 (7th Cir. 2006); *see also Buckley v. Gomez*, 36 F. Supp. 2d 1216 (S.D. Cal. 1997), *aff'd on other grounds*, 168 F.3d 498 (9th Cir. 1999).

The court in *In re Custody of ALD*, 191 Wash. App. 474, 363 P.3d 604 (2015), recognized that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Equal Protection Clause of the Fourteenth Amendment. There, clear, cogent, and convincing evidence did not support a required finding that a mother was an unfit parent or that placement of a child with the mother would cause actual detriment to the child's growth and development. This was so even though the

Kevin L. Johnson, P.S., Attorney at Law
Westside Business Plaza
1401 Harrison Ave., Suite 204
Olympia, Washington 98502
(360) 753-3066
(360) 705-9377

mother had struggled with her mental health some seven years earlier, had given temporary custody of the child to a neighbor and known felon, and her boyfriend had been convicted of child molestation 16 years earlier. In the instant case, the Defendants cannot meet the even higher burden that the law places on them to justify use of religion and race in making their decisions to deprive the Langs of their children for 425 days.

## CONCLUSION

For the foregoing reasons, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, this Court should grant the Plaintiffs' Motion for Judgment on the Pleadings in their favor and against the Defendant City of Vancouver.

Dated: _____, ____, 2020

Respectfully submitted,

s/ Kevin L. Johnson

Kevin L. Johnson, Esquire
WSBA #24784
Kevin L. Johnson, P.S.
1405 Harrison Avenue NW, Suite 204
Olympia, WA  98502
Telephone:  (360) 753-3066
Facsimile:  (360) 705-9377
Email:  kevinjohnson230@gmail.com
*Attorney for the Plaintiff*

Kevin L. Johnson, P.S., Attorney at Law
Westside Business Plaza
1401 Harrison Ave., Suite 204
Olympia, Washington 98502
(360) 753-3066
(360) 705-9377